## ATWOOD *vs.* GILLETT & DESNOYERS.

The bankruptcy of partners dissolves the partnership.

And if, after the bankruptcy, the partners continue the same kind of business, under the same partnership name, it is a new partnership.

A dissolution of partnership puts an end to the authority of one partner to bind the other.

Accordingly, where, after the bankruptcy of a firm, the partners continued the same kind of business, under the same partnership name, and one of them, in the name of the firm, executed a written acknowledgment of a partnership debt discharged by the bankruptcy, *it was held*, that the other partner was not bound by the acknowledgment.

*Held*, that parol contemporaneous evidence was admissible, to show that the defendant's written acknowledgement of a debt from which he had been discharged by bankruptcy, was avowedly obtained by the plaintiff, and in fact executed and delivered by the defendant, for the purpose of facilitating the proof of the debt against the defendant's estate in bankruptcy; and not with a view to its revival against the defendant. Such evidence would not contradict or vary the terms of a *valid* written instrument, but would show that the instrument never was *delivered*, and, therefore, never had any legal existence, or binding force *as a contract*.

CASE reserved from Wayne Circuit Court. This was an action of assumpsit, brought by Atwood against Gillett and Desnoyers, upon the following instrument :

Atwood *v.* Gillett & Desnoyers.

"This may certify that there is due S. F. Atwood on settlement of accounts, thirteen hundred and ten 18-100 dollars.                                                           *Gillett & Desnoyers.*

"Detroit, July 7, 1843."

The declaration contained the common money counts and an account stated ; and for particulars of his demand under these counts, the plaintiff furnished a copy of the above instrument.

The defendants plead—1. The general issue—2. Their discharge in bankruptcy, April 24, 1843, in proceedings instituted under the act of Congress approved August 19, 1841.

To the second plea, the plaintiff replied a new promise in writing after the discharge.

And the defendants rejoined, taking issue upon this replication.

The cause was tried at the May term, 1845, of the circuit court, before the Hon. D. GOODWIN, Presiding Judge.

On the trial the plaintiffs, to prove the partnership of the defendants, introduced several witnesses who testified that the defendants had been partners in business, as forwarding and commission merchants, for several years prior to 1843, and that they continued to do business, as such partners, up to July of that year. The witnesses further testified that they had never heard of a dissolution of the partnership.

The plaintiff then proved that the instrument described in his bill of particulars was written and signed by the defendant Gillett, and read the same in evidence to the jury.

On the part of the defence, one Ives, being introduced as a witness, testified to sundry conversations between

the plaintiff and the defendent Gillett, had before and at the time of the execution and delivery of the instrument above mentioned, tending to prove that it was avowedly obtained by the plaintiff, and was in fact executed and delivered by Gillett, for the sole purpose of being used as evidence, by the plaintiff, to prove his claim against Gillett and Desnoyers before Z. Platt, commissioner in bankruptcy, in order that he might obtain thereon the dividend to which he might be entitled in the distribution of their assets as bankrupts; and not for the purpose of furnishing the plaintiff with evidence of an acknowledged and subsisting debt against the defendants, or a promise of payment of the same.

The same witness also testified that Desnoyers was not present at any of these conversations, and knew nothing of the transaction to which they related, until informed of it by the witness, some time after the instrument above mentioned was executed and delivered by Gillett to the plaintiff.

The evidence being closed, the counsel for the defendants requested the court to charge the jury, that the bankruptcy of the defendants dissolved the partnership previously existing between them ; that after such dissolution the acknowledgment or agreement of one of the partners could not bind the other; and that, therefore, the plaintiff was not entitled to a verdict, unless they were satisfied that both of the defendants executed the instrument relied upon as evidence of an acknowledgment or new promise, or expressly consented to its execution.

On this point the court instructed the jury that the plaintiff was not entitled to recover upon the instrument unless they were satisfied from the evidence, that both of the defendendants executed it, or sanctioned its being executed ; that, should they be of opinion that it was executed and delivered by Gillett alone, without the

knowledge or consent of Desnoyers, the latter would not be bound by it. And this further instruction was given, that if the partnership of the defendants *in fact* continued, notwithstanding the bankruptcy, and *involved the old business*, then the act of one was the act of both, and it was competent for Gillett to execute and deliver the instrument in the partnership name, and thereby bind both himself and Desnoyers.

The court also further charged the jury, that it was not competent, for the purpose of avoiding the instrument upon which a recovery was sought, to show by parol that it was applied for by the plaintiff, and was executed and delivered by the defendants, for the purpose of being filed with the commissioner in bankruptcy, to facilitate the proving of the plaintiff's claim against the estate of the defendants in bankruptcy; or in any other way to contradict, or change or destroy the legal effect of the instrument by parol evidence, showing what was said when it was executed, or that it was designed for any other purpose than that which appeared upon its face. That it was a general rule of law that parol evidence was not admissible to contradict a written instrument, or to vary its legal effect. And the court, for these reasons, withdrew from the jury so much of the testimony of Ives as related to the conversations between the plaintiff and Gillett, before and at the time of the execution and delivery of the instrument.

Under this charge the jury found a verdict for the plaintiff. The defendants thereupon moved the circuit court that the verdict be set aside and a new trial granted, on the ground of misdirection to the jury; which motion the Presiding Judge reserved and certified to this court.

*Van Dyke & Emmons*, and *A. D. Frazer*, in support of the motion.

1. The court erred in the instruction to the jury as to the power of Gillett to bind the firm of Gillett & Desnoyers. The partnership was dissolved by the bankruptcy, and neither partner *alone* had the power to revive a pre-existing debt, by a new promise or acknowledgement, in the partnership name. Story on Part. 193, 4, 460, 1, 2 ; 3 Kent's Com. 50 ; *Hackley* v. *Patrick,* 3 Johns. 356; *Walden* v. *Sherburne,* 15 Id. 424 ; *Bell* v. *Morrison,* 1 Pet. R. 360, 367 to 374 ; Ang. on Lim. 277 ; *Gleason* v. *Clark,* 9 Cow. 57 ; *Baker* v. *Stackpole,* Ib. 420 ; 5 Esp. R. 198 note.

2. The testimony of Ives was competent evidence and was improperly withdrawn from the jury.

The rule is admitted that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a *valid* written instrument ; but it applies only to instruments admitted to be valid, or which have had a legal existence; and not to questions concerning their validity. 2 Ev. Poth. on Ob., 171 ; Greenl. Ev. § 284 ; 2 Starkie Ev. 555 ; 1 Phil. Ev. 552, 555; 9 Cow. 310; Cow. & Hill's notes to Phill. Ev. 1445.

The rule does not apply to contracts implied by operation of law. The instrument in evidence was not an express promise. Admit that it was one from which the law would imply a promise to pay ; the evidence in question went merely to repel this legal inference or implication. It was in harmony with the terms of the instrument, and was admissible. *Susquehannah Bridge and Bank Co.* v. *Evans,* 4 Wash. C. C. R. 480 ; *Stackpole* v. *Arnold,* 11 Mass. R. 32 ; 2 Wash. C. C. R. 219, 233 ; *Pike* v. *Street,* 22 Eng. C. L. R. 299 ; *Hill* v. *Ely,* 5 Serg. & Rawle, 363 ; 1 Cox's R. 90 ; *Barker* v. *Prentiss,* 6 Mass. R, 433 ; 6 Conn. R. 224 ; 1 H. Bl. 602 ; Cow. & H. notes to Phill. Ev. 1473.

The evidence withdrawn from the jury was admissible, also, on the ground that it merely went to show that the

instrument was never delivered, except for a special purpose, viz :  for the purpose of enabling the plaintiff to prove his claim before the commissioner in bankruptcy. Cow. and Hill's notes to Phill. Ev. 1450, '8, '9, 1464 ; *Jeffries* v. *Austin*, 1 Strange, 644; *Jackson* v. *Roberts*, 1 Wend. 485 ; *Lovett* v. *Adams*, 3 Id. 325, 381.

It was also admissible for the purpose of showing a misapplication of the instrument.   1 B.  & Ad.  528 ; 9 Wend. 170 ; 8 Id. 437 ; 10 John. 267 ; 15 Id. 270, 231; 5 Wend. 566 ; 6 Id. 615 ; 1 Blackf. R. 315.

Also to show that the instrument was obtained by fraud and imposition.   1 Greenl. Ev. 322 ; 4 Am. C. L. R. 33; *Tallman* v. *Gibson*, 1 Hall's R. 308 ; 2 Camp. R. 574 ; 2 T. R. 766 ;   10 Johns. R. 459 ; 18 Id. 403; 1 Edw. Ch. 467 ; 1 Ev. Poth. on Ob. 15 ; 1 Story's Eq. Jur. 196, '7; 14 Wend. 195 ; *Jackson* v. *Myers*, 11 Wend. 536 ; *Foster* v. *Charles*, 19 Eng. C. L. R.  115 ; 20 Id. 65 ; *Polhill* v. *Walter*, 23 Id. 38 ; *Wilson* v. *Fuller*, 43 Id. 635 ; 3 Camp. R. 506 ; *Clark* v. *Gifford*, 10 Wend. 212 ; 2 Wils. R. 310 ; 16 Serg. & Rawle, 346 ; 8 Pick. 459 ;  21 Wend. 500 ; 1 Hill's R. 517 ; *Chandler* v. *Ford*, 30 Eng. C. L. R. 173.

Also to explain and apply the instrument.   *Smith* v. *Doeden*, 6  Eng. C. L. R. 262 ; 1 Phil. Ev. 562 ; 2 Cow. & Hill's notes to Phill. Ev. 1359, '60, 1388, '89, '92, '93, 1467 ; 1 Stark. Ev. 36, '7, '8, 47 ; 1 Greenl. Ev. 120, 316, 324 ; *Crary* v. *Sprague*, 12 Wend. 44 ; 13 Pet. R. 89, 96, '7, '8 ; *Schuyler* v. *Russ*, 2 Caines' R. 202 ; *Beach* v. *Depeyster*, 4 Camp. 385 ; *Ely* v. *Adams*, 19 John. 313 ; *King* v. *Laindon*, 8 T. R. 379 ; Poth. on Ob. 161; 1 Mason's R. 10, 11 ; 1 Dall. 426 ; 5 Day's R. 395 ; 5 Burr. R. 2804.

*T. Romeyn* and *J. S. Abbott*, contra.   The instrument offered in evidence, unless impeached, was sufficient to sustain the action.   It was in effect a promissory note. 2 Cow. 536 ; 10 Wend. 675 ; 1 Hill's R. 256.   And if not, it

was valid as an acknowledgement of a subsisting debt, sufficient to support the count in the declaration on an account stated. 1 John. 34; Chitt. on Contr. 648, '9, and cases there cited; Chitt. on Bills, (Ed. 1842,) 526 and notes. It was entirely free from ambiguity, and parol evidence was inadmissible to vary it. 1 Greenl. Ev. 315, 319, 321, 325; Chitt. on Contr. 99; 2 Wigr. on Wills, 333 and notes; 1 Hill's R. 608; 6 Id. 219; Cow. & Hill's notes to Ph. Ev. 1432. Such evidence was not admissible for the purpose of showing that the instrument was *delivered* on some understanding or condition inconsistent with its tenor and legal effect. See authorities above cited, and Chitt. on Bills 142 and notes. Nor was the testimony of Ives admissible in this case for the purpose of showing fraud, for it did not show *legal fraud.* 18 Wend. 608; 12 East 636. The instrument was the contract of both defendants, and binding upon both. Story on Part. 445, '6, 458, 460, '1; 3 Kent's Com. 53, 63; Collyer on Part. 233; Gow on Part. 80, '1, 213, '15.

RANSOM, C. J. delivered the opinion of the court.

It is shown by the pleadings in this case, that proceedings were instituted against the defendants by certain of their creditors, as involuntary bankrupts; that they were duly declared such bankrupts on the 16th of January, 1843; and that upon petition by them filed for that purpose, they were, on the 24th day of April, 1843, duly discharged from all their debts, then existing.

The fourth section of the bankrupt law of 1841, provides, that every bankrupt, upon a compliance with the requisitions of the act, shall be entitled to a full discharge from all his debts.

The debt then, the payment of which the plaintiff now seeks to enforce, was extinguished and gone, as essentially as though it had been fully paid, unless revived and again

brought into life, by a renewed undertaking of the defendants to pay it.

The debt being extinguished, a new promise of payment, to bind the bankrupt, must be express, distinct and unequivocal; for, although the debt thus discharged, but unpaid in fact, furnishes a sufficient consideration for a promise when expressly made, yet it affords no ground for the implication of a promise to pay.   1 Stark. R. 37 ; 5 Esp. R. 198.   The only proof of a new promise adduced by the plaintiff, was the certificate made by Gillett alone.   It is unnecessary to stop here to consider whether that instrument is sufficient to revive the debt against Gillett.   If we admit it to be so, the enquiry still remains, whether it should bind Desnoyers also.   The plaintiff's counsel maintain that it should, on the ground that the defendants jointly contracted the original debt as partners ; and although they had been discharged in bankruptcy, yet that they continued their partnership relation, carrying on the same business, in which they had been previously engaged, up to, and at the time, Gillett gave to the plaintiff the certificate in question.

The position here taken for the plaintiff would be impregnable, if the partnership of the defendants could be said to have *continued,* unaffected and uninterrupted by the bankruptcy.   But that the partnership was dissolved by the proceedings in bankruptcy, there can be no question.   That relation, upon their being declared bankrupts, was as effectually terminated, as it could have been by the most solemn agreement of the parties.

The fourteenth section of the bankrupt law of 1841, prescribes the mode of proceeding where two or more persons, who are partners in trade, are sought to be declared bankrupts ; and after providing for placing all the property of the partners, joint and separate, under the control of the assignees, and for the payment of the joint debts,

this further provision is made—"And if there shall be any balance of the joint stock, after the payment of the joint debts, such balance shall be divided and appropriated to and among the separate estates of the several partners, according to their respective rights and interests therein, and as it would have been, if the partnership had been dissolved, *without any bankruptcy.*" But independently of this provision in the act of Congress, the result would be the same. The Roman law, the common law, and the modern foreign law, all, says Judge Story, concur in the same general result—that bankruptcy, or insolvency, is, of itself, by mere operation of law, a complete dissolution of the partnership. Story on Part. 446.

But, it is said again, the partnership did *in fact* continue and involved the *"old business."* The defendants, it is true, were the same persons, carried on the same *kind* of business, perhaps with the same customers, and for ought we know, in the same place, *before* and *subsequently* to their discharge under the bankrupt act. Yet how could the latter business involve the former? What remained of their *"old business?"* We have already seen that they were forever discharged from their debts; and the third section of the act, provides that "all the property and rights of property, of every name and nature, and whether real, personal or mixed, of every bankrupt, except," &c., (referring to household furniture and other necessary articles which are reserved,) "who shall, by a decree of the proper court, be declared to be a bankrupt within this act, shall, by *mere operation of law, ipso facto,* from the time of such decree, be deemed to be divested out of such bankrupt, without any other act, assignment, or any other conveyance whatsoever, and the same shall vest in the assignee." And now, I ask again, what was there left of the *"old business,"* to be involved in the new? The partnership was dissolved at the instant the decree passed; every

vestige of their property divested out of them, in the language of the act, and their debts for ever discharged.    I confess I am unable to perceive anything remaining of the " *old business*," that could, in any way, be connected with the *new*.

Suppose the defendants, immediately upon their bankruptcy, under the style of their former partnership, and in the same building they previously occupied, had established themselves in a retail business, of dry goods, for instance : will it be contended that, from such relation, a mutual agency would be presumed, authorizing each partner to bind the other, to the payment of their former debts? I presume not.    Can it vary the case in any degree, that instead of such a business as I have supposed, they resumed and continued the same kind of business, that they had pursued prior to their bankruptcy? Really, it seems to me, none whatever.    The business of the several periods was entirely distinct and separate, the one from the other.    The decree in bankruptcy placed a partition wall between them, which never could be broken down, except by the positive acts or express declarations of *both* the parties.

But further discussion on this point must be unnecessary    It is, after all, resolvable into the single question, whether or or not the partnership was dissolved by the bankruptcy proceedings ; and that it was, is not denied.

That the defendants may have, immediately after the dissolution by bankruptcy — *eo instanti,* as the plaintiff's counsel contend, entered into and continued to carry on, *similar* business, can make no difference.    Whether they did so, in one hour, a day, a week, or a year after the dissolution is unimportant.    The business which should succeed the bankruptcy, could have no relation to that which preceded it.

We will now proceed to inquire whether one partner, by

his acts, acknowledgements or agreements, can bind his copartners, without their assent, *after* a dissolution.

This question has most frequently arisen in cases where it has been sought to revive partnership debts, which were barred by the statute of limitations.   It was long held in the English courts, that the acknowledgments or agreements of *one* partner were sufficient to take a case out of the statute.   The rule was apparently founded, says Judge *Story,* upon a mere unreasoned decision in the time of Lord *Mansfield ;* and so manifest was its injustice, that it was overturned by an act of Parliament.   Story on Part. 461.   In our own country, although the English rule was followed, formerly, in most of the states, yet it may now be said, that the weight of authority greatly preponderates against it.   It certainly cannot be defended upon the familiar principle, which , in relation to existing partnerships, makes the acts and declarations of one partner binding upon the others ; because, on the termination of that relation, the supposed confidence created, and agency conferred by it, are necessarily withdrawn.   *Bell* v. *Morrison,* 1 Pet. R. 373.

*Bell* v. *Morrison* is a leading case upon this point.   Many of the previous cases, English and American, are there reviewed ; and the rule laid down in *Hackley* v. *Patrick,* 3 Johns. R. 537, is adopted,—that after a dissolution of a copartnership the power of one partner to bind the others wholly ceases.   This doctrine is affirmed in Ang. on Lim. 277 ; *Baker* v. *Stackpole,* 9 Cow. 420 ; *Walden* v. *Sherburne* 15 Johns. R. 409 ; and 3 Kent's Com. 50.

Our conclusion, then, upon this branch of the case is, that by the evidence adduced upon the trial, under the rules of law applicable thereto, Gillett had no power or authority to bind Desnoyers, by the certificate which he made and delivered to the plaintiff; and consequently, that no recovery can be legally had thereon, in this action against the defendants jointly.

For the determination of the present case, it is unnecessary to consider the other points made by the defendant's motion ; but as the question is properly before us, and that further litigation may be prevented, we propose to consider briefly, whether, for any of the proposes for which it was offered by the defendants, the testimony of Eardly Ives should have been left with the jury and considered by them, and whether it was erroneously withdrawn after it had been submitted.

I remark, before proceeding further, that we do not intend to trench at all upon the well settled rule, that parol evidence is inadmissible to contradict, vary, or explain a written instrument, capable of explanation by its own terms.    That rule is founded in a sound and wise policy, and should be adhered to with unrelaxing tenacity.    Its effect is essentially that of a statute of frauds and perjuries, and it largely tends to promote the ends of justice, as well as to prevent hard and unconscionable swearing.

The defendants insist that the testimony of Ives, if believed, proved conclusively, that the certificate never was delivered to the plaintiff,—that is, in a technical, legal sense ; that it was in fact placed in his hands for the sole purpose heretofore mentioned, and never was designed by Gillett to become operative as a contract ; and that the plaintiff well knew such to be Gillett's understanding of the transaction, and *professedly* acted upon that understanding himself, in obtaining possession of the instrument.    Was such proof competent ?    The circuit court, as we have seen, adjudged it incompetent, as falling within the rule just alluded to which excludes parol evidence.    But does it so ?    That rule is based upon the presumption, that where parties reduce a contract to writing, they place their *whole* contract, as finally settled and agreed to between them, in that form ;—that all the conversations and propositions, had and made, on one side or the other, pending the

negotiation, and not found in the instrument adopted as the evidence of their agreement, were rejected.    But it is to be kept in mind that the rule applies only to instruments which have a legal existence. 1 Greenl. Ev. 322.    Hence, it has never been deemed an infraction of it, to show that an instrument, though full and complete in its terms, and although found in the hands of the obligee or payee named therein, was never delivered ; or that it was obtained by fraud ; or that it was delivered as an escrow ; or to take effect on a contingency, which has not happened.  Cow. & Hill's notes  to Ph.  Ev. 1450 ;  *Roberts*  ads. *Jackson,*  1 Wend. 485; 1 Greenl. Ev. 322.  So it has been held competent to show that a contract was obtained in an unwarrantable manner.  In *Roberts* ads *Jackson,* Chief Justice *Savage* says that it is always competent to show that a  deed was delivered as an escrow, or that the grantee obtained possession of it in an improper manner.    This must of necessity, he adds, be shown by parol : and this species of  evidence has never been considered as coming within the rule which rejects parol proof, when offered to contradict a deed. The proof in all these  cases is received,  not for the purpose of contradicting  or  varying the effect of an instrument in writing, but to  show  that it is entirely void, or that it is not of binding force.    And here, undoubtedly, lies the line of distinction.    Where parol evidence is offered to show that the written contract is void, or not of binding force, it is admissible ; but if the  object be to prove that it was intended to mean something different  from what its language imports, it is inadmissible.    As for  instance, that a contract on its face payable in  money, was meant to be payable in some commodity ; that a note made payable in six months, was to be paid in a year ; that a  note for $1,000 was intended to be  for $500 only ; or that a note bearing interest on  its face  should not carry interest and the like.

In the case at bar, the effect of the testimony submitted to the jury and subsequently withdrawn was, not to contradict, or in any respect to vary or explain the terms of the instrument, but to show that it never was designed to be an operative contract to any extent or purpose whatever; that it was not made or delivered by Gillett with that view, and not so received by Atwood.   Was not the evidence admissible for that purpose?   Did it not show that the certificate had no legal existence, *as a contract?*—that it had no binding force?   If it be said that the parol proof *contradicted* the writing, it may be replied, just so would proof that it never was delivered at all, or that it was obtained by fraud, or delivered as an escrow; and yet no one doubts the admissibility of proof of those facts.

Suppose Platt, the commissioner in bankruptcy, had requested the plaintiff to call on the defendants for such a certificate, for the purpose stated by Ives, and that he had done so, communicated the request, and received from the defendants the certificate, and that instead of delivering it to Platt, he had commenced a suit upon it?   Would not evidence of the facts supposed have been admissable in defence of such suit?   Most clearly.   For although there would have been an *actual physical* delivery of the instrument to the payee named, yet there would have been no *such* delivery as is requisite to give legal vitality to a written instrument, *as a contract.*   But again, for illustration, let us suppose that it had been agreed by the parties, that Gillett should make such a certificate as he did, and for a like purpose, and that the plaintiff's *clerk* should take it to Platt; that it should be delivered to such clerk by Gillett, with the expectation that he would take it to the commissioner; but instead of doing this he should carry it to the plaintiff, and the plaintiff should put it in suit.   Could not the defendants prove such facts, and upon them successfully defend the action?   They could be-

yond question. Well, the case supposed is an exact parallel to the one before us. That the plaintiff's *agent* should receive the paper instead of the *plaintiff himself* could make no difference. There still would be no delivery to the plaintiff in a *legal* sense,—in either case the plaintiff or his clerk, would be but the bare medium or channel through which the instrument was to be transmitted to the commissioner in bankruptcy.

We may apply another test to this case, which I think places the question under discussion beyond controversy. Suppose instead of saying to Gillett. that he wanted the certificate to use before the commissioner, the plaintiff had told the defendants that he wished to obtain from them a renewal of their indebtedness to him, and wanted their certificate or other writing, to that effect. Can it be believed, with the evidence we have before us, that Gillett would have delivered it ? Certainly not. How then can it be a contract as against the defendants ? It lacks the very first element of a contract—the agreement, the consent of the party to be bound by it. The minds of the parties never met upon it, as a contract.

The idea of a new promise to revive the discharged debt, seems never even to have been hinted at; on the contrary, the plaintiff, as Ives testified, told Gillett expressly, that the certificate could not "hurt *him* any how:" the whole negotiation, from beginning to end, through all their several conversations, seems to have been confined to a single object—the furnishing to the plaintiff convenient proof, to enable him to receive his dividend from the assignee in bankruptcy.

The very form of the instrument which was drawn up by Gillett, strongly fortifies the presumption that this was the only purpose for which the paper was made and delivered :—" This may certify that there is due," &c. Can it be credited that a practical business man, a mer-

chant, having adjusted accounts with his creditor, and found due the large sum of $1,300, and being about to furnish him with the evidence of his debt, would draw such an instrument as was given by Gillett to Atwood? Would Atwood have accepted such a paper? If it had been understood between them, that the defendants were renewing their liability to pay the debt, would not Atwood have been likely to insist upon an instrument that was usual among mercantile and other business men? Would not a promissory note have been the form of the contract? Would not Gillett, voluntarily, without anything being said on the subject, have written a note, in common form, if he had intended to bind himself to pay the debt? To have done otherwise would have been extraordinary, to say the least. But if the only object of the instrument was as stated by Ives, to apprise Mr. Platt of the amount of the plaintiff's claim against the defendants, the form adopted was perfectly appropriate.

I am not now speaking of the *construction* of the instrument. If it were a contract at all the construction given it by the circuit court, was, probably, the correct one. I allude to the peculiar phraseology used, only as it bears upon the question of delivery.

The case of *Howell* v. *Baker*, decided by this court at a former term, was cited by the counsel for the plaintiff and relied upon for our guidance in this. But I think there is a clear and well defined distinction between that case and the one at bar. There was no pretence in that case that the note was not delivered by the maker to the payee, as a valid and binding contract; but it was sought to show by parol, that at the time the note was made, it was agreed by the parties that the maker should have the right to return the money or bank notes for which it was given, by the next Monday morning, or pay it according to its terms, in one year from date with interest. I

need not recur to the facts of this case, to show the marked difference between it and the one just referred to.

We have given this case a very full and careful examination; every authority to which we have been referred, by the counsel on either side, has been closely scanned and, we think, received its just weight.

The thorough and extended research of authorities by the counsel of both parties, as well as their clear, elaborate and forcible argument of the case at the bar, has relieved us of much labor that, otherwise, we must have encountered, and has greatly facilitated our progress in arriving at what we believe to be a legal and just conclusion, from the facts presented by the case for our consideration.

It has been with great satisfaction, that in a case so important as the present one, we have found the opinion of the court entirely harmonious, upon the points decided ; and the opinion, which we direct to be certified to the circuit court for the county of Wayne, in answer to the questions reserved by that court, is, that the testimony of Ives was admissible, and the certificate in question, under the facts testified to by him, was wholly inoperative and void, as a contract between the plaintiff and the defendants, or either of them; and that the verdict, therefore, should be set aside, and a new trial granted.

*Ordered certified accordingly.*